UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CAROL EGE,

        Petitioner,                        Case Number: 01-10294-BC
                                                  Honorable David M. Lawson

v.

JOAN YUKINS,

        Respondent.
_____/

## ORDER DENYING MOTION FOR BOND PENDING APPEAL

This matter is before the Court on the petitioner's motion for bond pending appeal. The Court entered judgment on July 22, 2005 conditionally granting the petitioner's application for a writ of habeas corpus. The respondent filed a motion to stay the judgment pending appeal, and the petitioner responded with her bail motion. The Court has considered the parties' submissions and heard oral argument in open court on September 21, 2005. Thereafter, the Court granted the stay and took under advisement the bail motion.

In *Hilton v. Braunskill*, 481 U.S. 770 (1987), the Supreme Court set forth a four factor test to determine whether a successful habeas petitioner should be released during the period in which the State's appeal is pending. Those factors include: "(1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. Although these factors guide the district court, the Supreme Court has explained "the formula cannot be reduced to a set of rigid rules." *Id.* at 777. Thus, a district court properly may consider the possibility that a habeas petitioner may flee and the risk of danger the petitioner may pose to the

public if released. *Ibid.* Further, the State's interest in continued custody should be weighed and "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Ibid.*

By contrast, the petitioner's interest in "in release pending appeal, always substantial, will be strongest where the factors mentioned in the preceding paragraph are weakest." *Id.* at 777-78. The State's likelihood of success on the merits may well tip the balance: "Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Id.* at 778.

After considering these factors, the Court finds that the balance tips in favor of continued detention. The Court does not believe that the case against the petitioner is strong; it is entirely circumstantial and relies almost exclusively upon the testimony of witnesses whose credibility is questionable. The only evidence that lent some measure of credence to the State's theory at trial was the so-called bite-mark evidence, which the Court has determined was unreliable to the extent that its receipt contravened the Due Process Clause.

Moreover, the courts that have reviewed this case have found the police investigation lacking, the initial police work poor, and they have commented at the overall lack of physical evidence tying the petitioner to the crime scene. It is all but conceded that Dr. Warnick's testimony that the petitioner was the only one in 3.5 million people who could have made what he concluded was a bite mark on the victim's face was improperly admitted. Such probability statistics have roundly been criticized and not permitted on retrial of other defendants in Michigan where Dr.

Warnick initially testified. Moreover, the bite-mark evidence and attendant probability statement was the only physical evidence to link the petitioner to the crime scene.

As the petitioner notes, there is reason to question the lay witness testimony during trial. For instance, Richard Lingnau testified for the first time, some ten years after the crime, that he had accompanied the petitioner not to confront the victim but to kill her. In previous sworn testimony, however, Lingnau testified that the petitioner only wished to speak with, not harm, the victim. Lingnau also admitted to being an alcoholic during the relevant time. Prior to trial, Lingnau was involved in an armed confrontation with police and subsequently was committed in a mental institution. At one point, Lingnau denied that he was Lingnau when police questioned him. In other testimony, Lingnau described the crime as occurring more than a year before the victim's murder.

Another witness to testify at trial, Timothy Apker, similarly is problematic. This witness had problems recalling whether his ex-wife or the petitioner wanted to kill the victim. Apker recalled that the petitioner had asked him to kill the victim for $350 or $500 at a local Taco Bell. In 1992, during police questioning, Apker could not recall going to a Taco Bell with the petitioner. Apker also admitted he disliked the petitioner because he felt the petitioner had meddled in his relationship with his ex-wife.

Other evidence in the case seemed to point to Mark Davis, the boyfriend of both the petitioner and the victim. There was evidence to suggest Davis' mother was the architect of a plot to kill the victim. Davis had drunk five bottles of wine on the night of the murder and had gone to the victim's home. His presence at the victim's home coincides approximately with the time the victim died. Davis' alibi – that he was drinking with Bob Dunn – fell apart when Dunn denied being with the Davis on the night of the crime. Davis was also the one to find the body. However, instead

of driving to a local police station to get help, he went to a friend's house four miles away. In so claiming, Davis was unable to explain his whereabouts for about thirty minutes. Davis, as the petitioner notes, never called 911.

The evidence in this case does not appear to be overwhelming of the petitioner's guilt. Absent the bogus bite-mark testimony, there is grave doubt as to whether the jury would have convicted the petitioner. The likelihood of success on the merits on appeal does not appear strong. Other cases in which Warnick's testimony was used bears out this conclusion, at least as to the success of the State on retrial. *See People v. Moldowan*, 466 Mich. 862, 643 N.W.2d 570 (2002) (table); *People v. Chrisitini,* No 90-1517 (Macomb County Mich. Cir. Ct.). In both cases, the defendants were acquitted.

However, the petitioner remains charged with first-degree murder. The State has expressed its unequivocal intention to retry her if its appeal is unsuccessful. She presently, therefore, is relegated to the status of a pretrial detainee. "The right to bail under the Eighth Amendment to the United States Constitution prior to conviction is not absolute." *Bloss v. Michigan*, 421 F.2d 903, 905 (6th Cir. 1970). In Michigan, bail routinely is denied defendants charged with first-degree murder. *See* Mich. Const. art. I, § 15(b) (denying bail "where proof is evident or the presumption great" to all "person[s] . . . indicted for, or arraigned on a warrant charging, murder or treason"); Mich. Comp. Laws § 765.5 (stating that "[n]o person charged with treason or murder shall be admitted to bail if the proof of his guilt is evident or the presumption great"). With its remaining evidence, the Court presumes that the State will present a substantial case that will survive a motion for judgment of acquittal, since the essence of the proofs will turn on witness credibility that must be determined by a jury. The penalty for the crime is life in prison without the possibility of parole.

*See* Mich. Comp. Laws § 750.316.  The public interest and the possibility of irreparable harm that could result from release militate against bail pending appeal in this case.  The State's interest in continued custody pending appeal, therefore, outweighs the factors in the petitioner's favor.

Accordingly, the motion for bond pending appeal [dkt # 33] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 12, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---